## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MOHAMMED AL AMIN | GEORGE W. BUSH, ET AL. |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)         99999

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

COHEN MILSTEIN HAUSFELD & TOLL, P.L.L.C.
1100 NEW YORK AVE., NW SUITE 500-WEST
WASHINGTON, DC 20005

ATTORNEYS (IF KNOWN)

KENNETH L. WAINSTEIN, U.S. ATTORNEY
DISTRICT OF COLUMBIA
JUDICIARY CENTER, 555 4TH STREET NW
WASHINGTON, DC

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- O  1 U.S. Government Plaintiff
- O  3 Federal Question (U.S. Government Not a Party)
- ⊙  2 U.S. Government Defendant
- O  4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| O A. *Antitrust* | O B. *Personal Injury/ Malpractice* | O C. *Administrative Agency Review* | O D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| O E. *General Civil (Other)* | OR | O F. *Pro Se General Civil* |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ⊙ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| [X] 530 Habeas Corpus-General <br> ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br> ☐ 740 Labor Railway Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights <br> ☐ 445 American w/Disabilities-Employment <br> ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☐ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

28 USC 2241, HABEAS PETITION CHALLENGING DETENTION AT GUANTANAMO

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** ☐    Check YES only if demanded in complaint    **JURY DEMAND:**    YES ☐    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☐    If yes, please complete related case form.

DATE  12/6/05    SIGNATURE OF ATTORNEY OF RECORD   *Matt Hawn*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

CLERK'S OFFICE                          CO-932
UNITED STATES DISTRICT COURT            Rev. 4/96
FOR THE DISTRICT OF COLUMBIA

## NOTICE OF DESIGNATION OF RELATED CIVIL CASES PENDING
## IN THIS OR ANY OTHER UNITED STATES COURT

Civil Action No. _____
(To be supplied by the Clerk)

**NOTICE TO PARTIES:**

Pursuant to Rule 405(b)(2), you are required to prepare and submit this form at the time of filing any civil action which is related to any pending cases or which involves the same parties and relates to the same subject matter of any dismissed related cases. This form must be prepared in sufficient quantity to provide one copy for the Clerk's records, one copy for the Judge to whom the cases is assigned and one copy for each defendant, so that you must prepare 3 copies for a one defendant case, 4 copies for a two defendant case, etc.

**NOTICE TO DEFENDANT:**

Rule 405(b)(2) of this Court requires that you serve upon the plaintiff and file with your first responsive pleading or motion any objection you have to the related case designation.

**NOTICE TO ALL COUNSEL**

Rule 405(b)(3) of this Court requires that as soon as an attorney for a party becomes aware of the existence of a related case or cases, such attorney shall immediately notify, in writing, the Judges on whose calendars the cases appear and shall serve such notice on counsel for all other parties.

_____

The plaintiff, defendant or counsel must complete the following:

I.    RELATIONSHIP OF NEW CASE TO PENDING RELATED CASE(S).

A new case is deemed related to a case pending in this or another U.S. Court if the new case:  [Check appropriate box(e's) below.]

    [ ]    (a)    relates to common property

    [✗]    (b)    involves common issues of fact

    [✗]    (c)    grows out of the same event or transaction

    [ ]    (d)    involves the validity or infringement of the same patent

    [ ]    (e)    is filed by the same pro se litigant

2.    RELATIONSHIP OF NEW CASE TO DISMISSED RELATED CASE(ES)

A new case is deemed related to a case dismissed, with or without prejudice, in this or any other U.S. Court, if the new case involves the same parties and same subject matter.

Check box if new case is related to a dismissed case:    [ ]

3.    NAME THE UNITED STATES COURT IN WHICH THE RELATED CASE IS FILED (IF OTHER THAN THIS COURT):

_____

4.    CAPTION AND CASE NUMBER OF RELATED CASE(E'S).  IF MORE ROOM IS NEED PLEASE USE OTHER SIDE.

Aziz _____ v. Bush _____ C.A.No. 05-492-JR

12/6/05 _____          _____
DATE                          Signature of Plaintiff/Defendant (or counsel)

**RELATED CASE**

The present case is related to *Aziz v. Bush*, 05-492 (JR).  Both cases involve Mauritanian Petitioners.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MOHAMMED AL AMIN                              )
    Detainee,                                )
    Guantánamo Bay Naval Station             )
    Guantánamo Bay, Cuba;                    )
                                             )
SHAKER AAMER,                                 )
    Detainee,                                )
    Guantánamo Bay Naval Station             )
    Guantánamo Bay, Cuba;                    )
    as Next Friend of Mohammed Al Amin;      )
                                             )
*Petitioners/Plaintiffs*,                     )
                                             )
                                             )   **PETITION FOR WRIT**
                                             )   **OF HABEAS CORPUS**
v.                                            )
                                             )
                                             )   No. _____
                                             )
GEORGE W. BUSH,                               )
    President of the United States           )
    The White House                          )
    1600 Pennsylvania Ave., N.W.             )
    Washington, D.C. 20500;                  )
                                             )
DONALD RUMSFELD,                              )
    Secretary, United States                 )
    Department of Defense                    )
    1000 Defense Pentagon                    )
    Washington, D.C. 20301-1000;             )
                                             )
ARMY BRIG. GEN. JAY HOOD,                     )
    Commander, Joint Task Force - GTMO       )
    JTF-GTMO                                 )
    APO AE 09360; and                        )
                                             )
ARMY COL. MIKE BUMGARNER,                     )
    Commander, Joint Detention              )
        Operations Group - JTF-GTMO,      )
    JTF-GTMO                                 )
    APO AE 09360,                            )
                                             )
*Respondents/Defendants*.                     )

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Al Amin seeks the Great Writ. A citizen of Mauritania, he acts on his own behalf and through his Next Friend, Shaker Aamer, his friend and co-prisoner. He is a civilian wrongly classified as an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), without basis, without charge, without access to counsel and without being afforded any fair process by which he might challenge his detention. Petitioner is being held by color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner Al Amin or to establish in this Court a lawful basis for Petitioner Al Amin's detention. This Court should also order injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13 Executive Order, Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of the detained Petitioner at Guantánamo.

## JURISDICTION

1.    Petitioners bring this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242. Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth, Sixth, and Eighth

2

Amendments to, the United States Constitution. Because they seek declaratory relief,

Petitioners also rely on Fed. R. Civ. P. 57.

2.   This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus,

and to entertain the Petition filed by Shaker Aamer, the Next Friend of Petitioner Amin,

under 28 U.S.C. § 2242.  This Court is further empowered to declare the rights and other

legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce

declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case

involves an actual controversy within the Court's jurisdiction, and to issue all writs

necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## I.
## PARTIES

3.   Petitioner Al Amin is a Mauritanian citizen who is presently incarcerated at Guantánamo

and held in Respondents' unlawful custody and control.  *See* Authorization of Shaker

Aamer, attached as Exhibit A.  On information and belief, Petitioner Al Amin is on

hunger strike, has been hospitalized, force fed, and is very weak.

4.   Petitioner Shaker Aamer is Petitioner Al Amin's friend and co-prisoner.  Because his

friend and co-prisoner has been denied access to legal counsel and to the courts of the

United States, Shaker Aamer acts as his Next Friend.  *See* Exhibit A.

5.   Respondent George W. Bush is the President of the United States and Commander-in-

Chief of the United States Military.  Petitioner Al Amin is being detained pursuant to

President Bush's authority as Commander-in-Chief, under the laws and usages of war or,

alternatively, pursuant to the Executive Order of November 13, 2001, Detention,

Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg.

3

57,833 (November 13, 2001) ("Executive Order"). President Bush is responsible for Petitioner Al Amin's unlawful detention and is sued in his official capacity.

6.    Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war or, alternatively pursuant to the Executive Order, Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of Petitioner Al Amin. He is sued in his official capacity.

7.    Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay. He has supervisory responsibility for Petitioner Al Amin and is sued in his official capacity.

8.    Respondent Army Col. Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner Al Amin is presently held. He is the immediate custodian responsible for Petitioner Al Amin's detention and is sued in his official capacity.

9.    Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

4

## II.
## STATEMENT OF FACTS

10.     Petitioner Al Amin is a Mauritanian citizen. He is very young, likely about 22 years of

age. Upon information and belief, Petitioner Al Amin is not, nor has he ever been, an

enemy alien, lawful or unlawful belligerent, or combatant of any kind under any

definition adopted by the government in any civil or military proceeding.

11.     Upon information and belief, Petitioner Al Amin is not, nor has he ever been, an "enemy

combatant" who was "part of or supporting forces hostile to the United States or coalition

partners in Afghanistan and who were engaged in an armed conflict against the United

States there." *Hamdi v. Rumsfeld*, 542 U.S. 507, 516 (2004).

12.     Petitioner Al Amin seeks to enforce his right to a judicial determination by an appropriate

and lawful authority that there is a factual and legal basis for Respondents' determination

that he is either an "enemy combatant" as defined by the United States Supreme Court in

*Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the

Combatant Status Review Tribunals.

13.     Upon information and belief, at the time of his seizure and detention, Petitioner Al Amin

was not a member of the Taliban Government's armed forces or Al Qaeda. He did not

cause or attempt to cause any harm to American personnel or property prior to his

detention. He remains incarcerated at the U.S. Naval base at Guantánamo, Cuba, a

territory over which the United States exercises exclusive jurisdiction and control.

14.     Petitioner Al Amin has not been afforded any procedures that would satisfy his rights

under the most fundamental common law notions of due process, the U.S. Constitution,

the laws and treaties of the United States, or customary international law.

15.    Upon information and belief, Petitioner Al Amin desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

### THE JOINT RESOLUTION

16.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

17.    As, upon information and belief, Petitioner Al Amin did not participate in the armed conflict at any point in time, he is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or under the Joint Resolution.

18.    Upon information and belief, Petitioner Al Amin is not, and has never been, a member of Al Qaeda or any other terrorist group. Prior to his detention, he did not commit any violent act against any American person or espouse any violent act against any American person or property. He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group. He is not properly subject to the detention order issued by President Bush. As he did not participate in the armed conflict at any point in time, he is not properly subject to President Bush's authority as Commander-in-Chief or under the laws and usages of war.

6

### THE EXECUTIVE ORDER

19.  On November 13, 2001, Respondent Bush issued an Executive Order authorizing

Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to

believe":

i.    is or was a member of the organization known as al Qaeda;
ii.   has engaged in, aided or abetted, or conspired to commit, acts of international
      terrorism, or acts in preparation therefor, that have caused, threaten to cause, or
      have as their aim to cause, injury to or adverse effects on the United States, its
      citizens, national security, foreign policy, or economy; or
iii.  has knowingly harbored one or more individuals described in subparagraphs (i)
      and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001).  President Bush

must make this determination in writing.  The Executive Order was neither authorized

nor directed by Congress, and is beyond the scope of the Joint Resolution of September

18, 2001.

20.  The Executive Order purports to vest President Bush with the sole discretion to identify

individuals who fall within its purview.  It establishes no standards governing the

exercise of his discretion.  Once a person has been detained, the Executive Order contains

no provision for that person to be notified of the charges he may face.  The Executive

Order authorizes detainees to be confined indefinitely without charges.  It contains no

provision for a detainee to be notified of his rights under domestic and international law,

and provides neither the right to counsel, nor the rights to notice of consular protection or

to consular access at the detainee's request.  It provides no right to appear before a

neutral tribunal to review the legality of a detainee's continued detention and contains no

provision for recourse to an Article III court.  In fact, the Executive Order expressly bars

review by any court.  The Executive Order authorizes indefinite and unreviewable

7

detention, based on nothing more than the President Bush's written determination that an individual is subject to its terms.

21. The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner Al Amin was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner Al Amin at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner Al Amin, was, and is, being made by Respondents in the United States and in this judicial district.

22. President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner Al Amin is subject to the Executive Order.

23. Petitioner Al Amin is not properly subject to the Executive Order.

24. Petitioner has not been, and is not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief and/or under the laws and usages of war. Petitioner was not arrested or detained by the United States in the course of an armed conflict. Petitioner Al Amin is not properly detained under President Bush's authority as Commander-in-Chief or under the laws and usages of war.

### Guantánamo Bay Naval Station

25. On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba. In April 2002, all prisoners were transferred to a Camp Delta, a more permanent prison facility at Guantánamo. Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

8

26.     Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 542 U.S. 466, 124 S.Ct. 2686, 2698 (June 28, 2004).

27.     On a date unknown to counsel, but known to Respondents, the United States military transferred Petitioner Al Amin to Guantánamo, where he has been held ever since, in the custody and control of Respondents.

### THE CONDITIONS OF DETENTION AT GUANTÁNAMO

28.     Since gaining control of Petitioner Al Amin, the United States military has held him virtually *incommunicado.*

29.     Upon information and belief, Petitioner Al Amin has been or will be forced to provide involuntary statements to Respondents' agents at Guantánamo and has been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not been notified of any pending or contemplated charges. He has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel. He has not been adequately informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary international law. Indeed, Respondents have taken the position that Petitioner Al Amin should not be informed of these rights. As a result, Petitioner Al Amin lacks any ability to protect or to vindicate his rights under domestic and international law.

30.    Upon information and belief, Petitioner Al Amin has been forced to provide involuntary

statements to Respondents' agents, employees, and/or contract employees at

Guantánamo.

31.    Upon information and belief, Petitioner Al Amin has been held under conditions that

violate his constitutional and international rights to dignity and freedom from torture and

from cruel, inhuman and degrading treatment or punishment. *See*, *e.g.*, United Nations

Press Release, "United Nations Human Rights Experts Express Continued Concern

About Situation of Guantánamo Bay Detainees," Feb. 4, 2005; International Committee

of the Red Cross, Press Release, "The ICRC's Work at Guantánamo Bay," Nov. 30,

2004; International Committee of the Red Cross, Operational Update, "US Detention

Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC,"

July 26, 2004; Amnesty International, *United States of America: Human Dignity Denied:*

*Torture and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004) (available at

http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C. Scheck,

*Abuse of Detainees at Guantánamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers

Champion, Nov. 2004, at 4-5.  Indeed, many of these violations – including isolation for

up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep

deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create

anxiety and terror – were actually interrogation techniques approved for use at

Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from

William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002);

*Pentagon Working Group Report on Detainee Interrogations in the Global War on*

*Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003).[1]

32.   In a confidential report to the United States government, the ICRC charged the U.S. military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in Guantánamo," *New York Times*, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4. Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. *See Guantánamo: An Icon of Lawlessness,* Amnesty International, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantánamo," *New York Times*, Jan. 1, 2005, at A11; Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," *Washington Post*, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," *New York Times*, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of

---

[1]     Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Assoc. Press, Nov. 4, 2004.

Detainees at Guantánamo Bay," *Washington Post*, Dec. 21, 2004, at A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*, Dec. 7, 2004, at A19. Even more recently, the Associated Press has reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. Associated Press, *Gitmo Soldier Details Sexual Tactics*, Jan. 27, 2005.

33. The unlawful and unconstitutional interrogation techniques used by Respondents at Guantánamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees. *See* Sam Hannel, "Lawyers Describe Guantánamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

34. Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush. Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

35. In published statements, President Bush and Secretary Rumsfeld, and predecessors of Hood and Gyurisko, respectively, Lenhert and Carrico, have proclaimed that the United States may hold the detainees under their current conditions indefinitely. See, e.g.,

12

Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S.

Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely

at the base. He said that the detention of some would be open-ended as the United States

tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine

Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the

temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as

a work in progress . . .' Lehnert told CNN. Lehnert said plans are to build a more

permanent prison 'exactly in accordance with federal prison standards . . . ."); John

Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, February 13, 2002.

("As the Bush Administration nears completion of new rules for conducting military

trials of foreign detainees, U.S. officials say they envision the naval base at Guantánamo

Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to

come.").

36.    According to the Department of Defense, even detainees who are adjudged innocent of

all charges by a military commission may nevertheless be kept in detention at

Guantánamo indefinitely. *See* Department of Defense Press Background Briefing of July

3, 2003, *at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last

visited Feb. 14, 2005).

37.    Counsel for Respondents have also consistently maintained that the United States has

reserved the right to hold the detained Petitioners under their current conditions

indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*,

(D.D.C.), Tr. of Dec. 1, 2004 Or. Argument on Mot. to Dismiss at 22-24, statements of

Principle Deputy Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, "Long-Term

Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1. Moreover, the

Government has recently acknowledged plans to begin constructing a new, more

permanent facility at Guantánamo. Christopher Cooper, "In Guantánamo, Prisoners

Languish in a Sea of Red Tape," *Wall Street Journal*, Jan. 26, 2005, at A1; Associated

Press, "Guantánamo Takes on the Look of Permanency," Jan. 9, 2005.

### RENDITION

38. During interrogations, detainees have also been threatened with rendition or transfer to

countries that routinely practice torture. Upon information and belief, the United States

has secretly transferred detainees to such countries without complying with the applicable

legal requirements for extradition. This practice, known as "rendition" or "extraordinary

rendition," is used to facilitate interrogation by subjecting detainees to torture. *See* Jane

Mayer, "Outsourcing Torture: The Secret History of American's "Extraordinary

Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106.

39. The U.S. government's practice of rendition has been well documented by various major

American and international news organizations, including, *inter alia*, the *Washington

Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC").

According to new accounts,

> Since September 11, the U.S. government has secretly transported dozens
> of people suspected of links to terrorists to countries other than the United
> States bypassing extradition procedures and legal formalities, according to
> Western diplomats and intelligence source. The suspects have been taken
> to countries, . . . whose intelligence services have close ties to the CIA and
> where they can be subjected to interrogation tactics -- including torture
> and threats to families -- that are illegal in the United States, the sources
> said. In some cases, U.S. intelligence agents remain closely involved in
> the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects,"

*Wash. Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for

Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,'
depend on arrangements between the United States and other countries, such as Egypt . .
., that agree to have local security services hold certain suspects in their facilities for
interrogation by CIA and foreign liaison officers.").

40.    Upon information and belief, Petitioner Al Amin is at risk of being rendered, expelled or
returned without lawful procedures to a country that engages in torture during
interrogations and incarceration.

### III.
### CAUSES OF ACTION

#### FIRST CLAIM FOR RELIEF
#### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

41.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

42.    By the actions described above, Respondents, acting under color of law, have violated
and continue to violate common law principles of due process as well the Due Process
Clause of the Fifth Amendment to the Constitution of the United States.  President Bush
has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due
process of law, and the remaining Respondents have implemented those orders.
Respondents' actions deny Petitioner Al Amin the process accorded to persons seized and
detained by the United States military in times of armed conflict as established by, *inter
alia*, the Uniform Code of Military Justice,  Army Regulation 190-8, Articles 3 and 5 of
the Third and Fourth Geneva Conventions, and customary international law as reflected,
expressed, and defined in multilateral treaties and other international instruments,
international and domestic judicial decisions, and other authorities.

15

43.    To the extent that Petitioner Al Amin's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner.

44.    Accordingly, Petitioner Al Amin is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF
(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

45.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

46.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Al Amin to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

47.    Accordingly, Petitioner Al Amin is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

THIRD CLAIM FOR RELIEF
(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

48.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

49.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner Al Amin the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

50.    Violations of the Geneva Conventions are direct treaty violations, are violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

16

51.   Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

52.   Accordingly, Petitioner Al Amin is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FOURTH CLAIM FOR RELIEF
(INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW -
ARBITRARY DENIAL OF DUE PROCESS)

53.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

54.   By the actions described above, Respondents have denied and continue to deny Petitioner Al Amin the due process accorded to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

55.   Accordingly, Petitioner Al Amin is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FIFTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - TORTURE)

56.   Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

57.   By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner Al Amin in order to obtain coerced information or confessions from him, punish or intimidate Petitioner Al Amin or for other purposes.  Among other abuses, Petitioner Al Amin has been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe

17

beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

58.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

59.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner Al Amin.

60.    Petitioner Al Amin was forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - WAR CRIMES )

61.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

62.    By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Petitioner Al Amin constitute war crimes and/or crimes against humanity in violation of

18

the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts

violated, among others, the Fourth Geneva Convention, Common Article III of the

Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as

well as customary international law prohibiting war crimes as reflected, expressed, and

defined in other multilateral treaties and international instruments, international and

domestic judicial decision, and other authorities.

63.    As a result of Respondents' unlawful conduct, Petitioner Al Amin has been and is forced

to suffer severe physical and psychological abuse and agony, and is therefore entitled to

habeas, declaratory, and injunctive relief, and such other relief as the court may deem

appropriate.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)

64.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

65.    The acts described herein had the intent and the effect of grossly humiliating and

debasing Petitioner Al Amin, forcing him to act against his will and conscience, inciting

fear and anguish, and breaking his physical or moral resistance.

66.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of

the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated

customary international law prohibiting cruel, inhuman or degrading treatment as

reflected, expressed, and defined in multilateral treaties and other international

instruments, international and domestic judicial decisions, and other authorities.

67.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified,

and/or conspired together and with others to cause the cruel, inhuman or degrading

treatment of Petitioner Al Amin.

68. Petitioner Al Amin was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief, as well as other relief to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE -
### ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

69. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

70. The acts described herein constitute arbitrary arrest and detention of Petitioner Al Amin in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

71. Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner Al Amin in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

72. As a result of Respondents' unlawful conduct, Petitioner Al Amin has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

## NINTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

73.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

74.     By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner Al Amin in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

75.     As a result of Respondents' unlawful conduct, Petitioner Al Amin has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to declaratory and injunctive relief and such other relief as the court may deem appropriate.

TENTH CLAIM FOR RELIEF
(ARTICLE II OF THE UNITED STATES CONSTITUTION-
UNLAWFUL DETENTION)

76.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

77.     Petitioner Al Amin is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 124 S.Ct. 2633, 2642 n.1 (2004).

78.     By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Al Amin and transfer him to military detention, and by authorizing and ordering their continued military detention at

21

Guantánamo. All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner Al Amin.

79.    The military seizure and detention of Petitioner Al Amin by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution. To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

80.    To the extent that Respondents assert that their authority to detain Petitioner Al Amin derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

81.    Accordingly, Petitioner Al Amin is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL
DETENTION)

82.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

83.    Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

22

84. By arbitrarily and capriciously detaining Petitioner Al Amin in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

85. Accordingly, Petitioner Al Amin is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF
## (VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS )

86. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

87. By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Al Amin the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

88. Accordingly, Petitioner Al Amin is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## THIRTEENTH CLAIM FOR RELIEF
## (VIOLATION OF THE APA – TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

89. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

90. By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner Al Amin to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

23

91.     Accordingly, Petitioner Al Amin is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FOURTEENTH CLAIM FOR RELIEF
(VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

92.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

93.     Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Al Amin's right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Al Amin's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

94.     Accordingly, Petitioner Al Amin is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FOURTEENTH CLAIM FOR RELIEF
(DUE PROCESS CLAUSE - RENDITION)

95.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

96.     Upon information and belief, Petitioner Al Amin is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

97.     Accordingly, Petitioner Al Amin is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

FIFTEENTH CLAIM FOR RELIEF
(CONVENTION AGAINST TORTURE AND
CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

98.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

24

99. Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

100. Accordingly, Petitioner Al Amin is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

SIXTEENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- RENDITION)

101. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

102. Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute.

103. Accordingly, Petitioner Al Amin is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

**IV.**
**PRAYER FOR RELIEF**

WHEREFORE, Petitioners pray for relief as follows:

1. Designate Shaker Aamer as Next Friend of Petitioner Mohammed Al Amin;

2. Grant the Writ of Habeas Corpus and order Respondent to release Petitioner Al Amin from his current unlawful detention;

25

3.    Order that Petitioner Al Amin be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

4.    Order that Petitioner Al Amin cannot be transferred to any other country without the specific written agreement of Petitioner and Petitioner's counsel while this action is pending;

5.    Order that Petitioner Al Amin cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petition will be subject to torture

6.    Order Respondents to allow counsel to meet and confer with Petitioner Al Amin, in private and unmonitored attorney-client conversations;

7.    Order Respondents to cease all interrogations of Petitioner Al Amin, direct or indirect, while this litigation is pending;

8.    Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner Al Amin;

9.    Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

10.   Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner Al Amin without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the

26

United States military, the treaties of the United States, and customary international

humanitarian law; and

11.   Grant such other relief as the Court may deem necessary and appropriate to protect

Petitioner's rights under the common law, the United States Constitution, federal

statutory law, and international law.

Dated:        December 6, 2005            Respectfully submitted,

Counsel for Petitioners:

Michael D. Hausfeld (DC153742)
Agnieszka M. Fryzman (DC459208)
Matthew K. Handley (DC489946)
Reena Gambhir
**COHEN MILSTEIN HAUSFELD & TOLL**
1100 New York Ave, NW, Suite 500W
Washington, DC 20005
Telephone:   (202) 408-4600
Facsimile:   (202) 408-4699

John Holland (CO 5246)
Anna Cayton-Holland (CO 35811)
**LAW OFFICES OF JOHN HOLLAND**
2150 W. 29th Ave, Suite 500
Denver, CO 80211
Telephone:   (303) 860-1331
Facsimile:   (303) 832-6506

*Of Counsel*
Barbara J. Olshansky (NY0057)
Director Counsel
Tina Monshipour Foster (TF5556)
Gitanjali S. Gutierrez (GG1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

27

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioner certify, pursuant to L. Cv. R. 83.2(g), that they are representing

Petitioner without compensation.

Dated:          December 6, 2005          Respectfully submitted,

Counsel for Petitioners:

Michael D. Hausfeld (DC153742)
Agnieszka M. Fryzman (DC459208)
Matthew K. Handley (DC489946)
Reena Gambhir
**COHEN MILSTEIN HAUSFELD & TOLL**
1100 New York Ave, NW, Suite 500W
Washington, DC 20005
Telephone:   (202) 408-4600
Facsimile:   (202) 408-4699

John Holland (CO 5246)
Anna Cayton-Holland (CO 35811)
**LAW OFFICES OF JOHN HOLLAND**
2150 W. 29th Ave, Suite 500
Denver, CO 80211
Telephone:   (303) 860-1331
Facsimile:   (303) 832-6506

*Of Counsel*
Barbara J. Olshansky (NY0057)
Director Counsel
Tina Monshipour Foster (TF5556)
Gitanjali S. Gutierrez (GG1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499