# EXHIBIT B

El-Mashad vs.                    CV 05-270                    April 6, 2005
George W. Bush, et al.

Page 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHERIF EL-MASHAD, ET AL.        :    Civil Action No. 05-0270
                                :
            Petitioners         :    April 6, 2005
                                :
v.                              :
                                :
GEORGE W. BUSH, ET AL.,         :    4:30 p.m.
                                :
            Respondents         :
. . . . . . . . . . . . . . . . :    . . . . . . . . . . .


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JAMES ROBERTSON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Petitioners:        VENABLE, LLP
                            BY:  CAROL ELDER BRUCE, ESQ.
                                 RANDOLPH SERGENT, ESQ.
                                 DAVID G. DICKMAN, ESQ.
                                 PAUL F. KEMP, ESQ.
                            575 Seventh Street, NW
                            Washington, D.C.  20004-1601
                            (202) 344-8026

For the Respondents:        U.S. DEPARTMENT OF JUSTICE
                            CIVIL DIVISION
                            BY:  TERRY M. HENRY, ESQ.
                                 ROBERT J. KATERBERG, ESQ.
                            20 Massachusetts Avenue, NW
                            Washington, D.C.  20530
                            (202) 514-4107

Court Reporter:             REBECCA KING, RPR, CRR
                            Official Court Reporter
                            Room 4802-B, U.S. Courthouse
                            Washington, D.C. 20001
                            (202) 898-9398

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

El-Mashad vs.                CV 05-270                April 6, 2005
George W. Bush, et al.

Page 2

P R O C E E D I N G S

1

2          COURTROOM DEPUTY: This is the matter of Sherif

3     El-Mashad versus George W. Bush, et al., Civil Action 2005-270.

4     For plaintiffs, Ms. Bruce, Mr. Dickman, Mr. Sergent, and

5     Mr. Kemp; for the defendants, Mr. Henry and Mr. Katerberg.

6          THE COURT:  My first reaction looking at these papers

7     and looking at all of the stuff you've sent me is where is Judge

8     Green when we need her.  Judge Green would have cut through all

9     of these motions and all of these cases like a hot knife through

10    butter, and we wouldn't have to bring all these lawyers down

11    here to rehear and rehear and rehear the same proposition.

12          But Ms. Bruce, I'm particularly delighted to see you,

13    so tell me what you have to tell me.

14          MS. BRUCE:  Thank you, Your Honor.  Well, Your Honor,

15    the first thing I have to tell you is that we filed after

16    Judge Green already had consolidated the cases and was moving

17    rapidly toward a decision.  So that is why we filed our case

18    when we did and it didn't go before Judge Green, would that she

19    were here, would that a judge on the Court we're able to

20    consolidate all of the different cases and hear them.

21          But here we are, and we're delighted to be here as

22    well.

23          THE COURT:  We're working on that.  Maybe not

24    consolidate, but I think we may have to reinvent Judge Green

25    somehow.

United States District Court 202-898-9398          Rebecca King, RPR, CRR
For the District of Columbia                       Official Court Reporter
                                                   3c11739b-aea1-46ee-94d4-38fa68e07bf5

Case No. o. ---

El-Mashad vs.                    CV 05-270                    April 6, 2005
George W. Bush, et al.

Page 3

1          MS. BRUCE:  Somehow, yes.

2          Right now, though, the posture of this case is I just

3   wanted to sort of revisit that for a moment and then tell you

4   what we're prepared to do today, if the Court wishes to hear

5   argument.  We filed our petition for writ of habeas corpus on

6   behalf of our two clients on February the 5th, and we also

7   sought injunctive relief on that day.

8          On February the 25th the Government filed its

9   opposition to our motion for preliminary injunction, and on

10  March 11th we filed petition for an immediate issuance of a writ

11  of habeas corpus per 28 U.S.C. 2243, or in the alternative for

12  an order to show cause, because the Government had not at that

13  point, and still has not, responded appropriately to the

14  petition for writ, as required by the statute.  We have not

15  received, for instance, any factual returns or any information

16  from the Government, as the law requires.

17         On March 11th we also filed a reply to the Government's

18  opposition to our motion for preliminary injunction.  They, as I

19  indicated, had filed their opposition to the preliminary

20  injunction motion on February the 25th.

21         And finally, on March the 11th we sought leave to file

22  two affidavits, one for a Geoffrey Mock and one for Mohammed

23  Zarea.  We filed the Mohammed Zarea affidavit on

24  March the 22nd in support of our reply brief to the Government's

25  opposition to our motion for preliminary injunction, just to get

United States District Court 202-898-9398          Rebecca King, RPR, CRR
For the District of Columbia                        Official Court Reporter
                                                    3c11739b-aea1-46ee-94d4-38fa68e07bf5

El-Mashad vs.                CV 05-270              April 6, 2005
George W. Bush, et al.

Page 4

1   us up to date.

2           March 11th was a busy day, because on that day the

3   Government filed a motion to stay all proceedings because of the

4   appeal of Judge Green's and Judge Leon's orders.  And on

5   March the 22nd we opposed the Government's motion to stay all

6   proceedings.

7           So those are all the matters I think that are before

8   the Court today.  It's the Court's pleasure, if the Court would

9   like argument on any one or all of these motions, we're prepared

10  to give argument today.  Mr. Sergent, Randy Sergent, who is an

11  associate in Venable and who has astounded me with his excellent

12  research and writing capabilities, is prepared to also astound

13  us all, I hope, with his argument today if the Court will hear

14  argument.

15          David Dickman is with me as well.  David is of counsel

16  to our firm.  And Paul Kemp practices principally in

17  Montgomery County, but has appeared here many times.  He has not

18  yet electronically entered his appearance in the case, but will

19  do so forthwith.

20          So if the Court wishes to hear argument on the motion

21  for preliminary injunction, Mr. Sergent is prepared to give some

22  argument.

23          THE COURT:  I don't want to deprive Mr. Sergent of the

24  pleasure of presenting oral argument on this case, but I really

25  have a pretty clear view of where I think we ought to go.  Let

United States District Court 202-898-9398        Rebecca King, RPR, CRR
For the District of Columbia              Official Court Reporter
                                          3c11739b-aea1-46ee-94d4-38fa68e07bf5

El-Mashad vs.                    CV 05-270              April 6, 2005
George W. Bush, et al.

Page 5

1    me hear from the Government and see if they have any different

2    view of what the posture of the case is now.

3            MR. TERRY:  Your Honor, a number of courts have already

4    entered orders on the motion for preliminary injunction very

5    similar to the motion filed in this case, but we think the

6    issues in the case do warrant further attention with respect to

7    the judges in those prior courts -- or prior cases.

8            First of all, the relief that's sought in the motion

9    for preliminary injunction is somewhat unusual in a habeas

10   setting, because normally the end game of a habeas case is the

11   relinquishment of custody of the government holding the

12   petitioner of custody.

13           And here, effectively what's going on is that the

14   petitioners are asking the Court to order the Government

15   basically to retain custody so that they can proceed in the

16   case.  In other words, there is the potential, with respect to

17   the petitioners in this case or any of the other petitioners in

18   the pending Guantanamo Bay detainee cases, of the Government

19   deciding that in the interest of its own interest in conducting

20   the war on terrorism, that kind of thing, that it no longer has

21   an interest in detaining a detainee, either because the detainee

22   is determined to be a low risk situation.  And as the Government

23   has pointed out in the declarations that we filed in support of

24   our opposition to the motion for PI, the Government is not

25   interested in detaining people any longer than it has to, and it

United States District Court 202-898-9398        Rebecca King, RPR, CRR
For the District of Columbia                      Official Court Reporter
                                                  3c11739b-aea1-46ee-94d4-38fa68e07bf5

El-Mashad vs.                    CV 05-270                April 6, 2005
George W. Bush, et al.

Page 6

1    is conducting a number of different administrative type

2    proceedings in connection with those interests.

3           First of all, this past fall it has conducted

4    proceedings called the Combatant Status Review Tribunals to

5    determine whether or not detainees are legitimately

6    determined -- or classified to be enemy combatants at this time.

7    Those processes have been completed.

8           Then on top of that, they're starting up an annual --

9    or excuse me.  An administrative review board proceeding, which

10   is an annual proceeding to review the status of enemy combatants

11   to determine whether or not, even though someone is an enemy

12   combatant and subject to detention, they nonetheless, due to

13   their risk level, can be released.  They are determined, for

14   example, to be no longer a risk or not to pose a sufficient risk

15   to warrant their further detention.

16          As those proceedings progress, it could be that any

17   particular petitioner is determined to be a low risk situation

18   and the Government no longer has an interest in detaining them,

19   and so the Government initiates this process of repatriating

20   those people.  It goes through the process that's outlined in

21   the declarations that we submitted in opposition to the motion

22   for preliminary injunction; it attains assurances appropriate

23   for any particular circumstance involved, whether it be with

24   respect to the particular petitioner or the particular country

25   involved that the petitioner would be repatriated to.

United States District Court 202-898-9398        Rebecca King, RPR, CRR
For the District of Columbia                     Official Court Reporter
                                                 3c11739b-aea1-46ee-94d4-38fa68e07bf5

El-Mashad vs.                    CV 05-270              April 6, 2005
George W. Bush, et al.

1    Assuming those assurances are obtained to a level to

2  where the Government is confident that the petitioner would not

3  be subject to -- or more likely than not be subject to torture

4  or mistreatment in the receiving country, then a final decision

5  is made to transfer the petitioner.  And the Government should

6  be free to do that, because again, it no longer has an interest

7  in detaining the detainee, and it seems odd to -- for the Court

8  to basically order the Government to retain custody of someone,

9  when the very object of a habeas case is usually relinquishment

10  of custody.  And that's what would be involved in that

11  situation, is the United States relinquishing custody.

12    Now, there's another situation that's involved, and

13  that would be transfers to another country, not for release as

14  far as the United States is concerned, but because that other

15  country has its own independent interest in receiving a

16  detainee, either a law enforcement interest or that kind of

17  interest.

18    In those kinds of situations, a detainee is not

19  transferred to be held on behalf of the United States, as

20  indicated in the declarations.  And specifically I point you to

21  paragraph five --

22    THE COURT:  The detainee is released on a detainer, as

23  we say on the criminal side.

24    MR. TERRY:  Well, this is not a criminal process.

25    THE COURT:  But it's analogous to release to some other

United States District Court   202-898-9398        Rebecca King, RPR, CRR
For the District of Columbia                       Official Court Reporter

3c11739b-aea1-46ee-94d4-38fa68e07bf5

El-Mashad vs.                CV 05-270              April 6, 2005
George W. Bush, et al.

Page 8

1    authority on a detainer.

2          MR. TERRY: Where that other authority has its own

3    independent interest and will receive the detainee, and

4    processing him pursuant to the laws of that country.

5          Now, there have been about 65 of those kinds of

6    transfers, and with respect to most of the folks transferred

7    pursuant to that process, they've ultimately been released.

8          But in either case, you're dealing with a situation

9    where the United States is relinquishing its custody of the

10   individual. And what the petitioners are asking for basically

11   is that the Court order the U.S. to continue its custody to

12   basically avoid mooting out the habeas case. There's lots of

13   talk in their papers about the Court retaining jurisdiction and

14   things like that. But where the Government no longer has an

15   interest in detaining someone, it just seems odd for the Court

16   to continue -- or for the Court to order the Government to

17   continue detaining someone to avoid mooting out the case.

18         THE COURT: What do you know about the common law roots

19   of habeas corpus?

20         MR. TERRY: The common law roots of habeas?

21         THE COURT: Yeah. I mean, what did the original common

22   law writ require?

23         MR. TERRY: It required the Government to produce the

24   body before the Court.

25         THE COURT: Produce the body before the Court. Not

El-Mashad vs.                 CV 05-270              April 6, 2005
George W. Bush, et al.

Page 9

1   open the door and let the body go out, but produce the body

2   before the Court. Isn't that what the writ of habeas corpus is

3   all about?

4        MR. TERRY: But Your Honor, the writ is about that

5   where the Government entity that's detaining the individual

6   wishes to detain the individual. I mean, the individual is

7   contesting the legality of his detention.

8        THE COURT: Let me give you a hypothetical. Let me

9   give you two hypotheticals, one of them a little more pointed

10  than the other. One of them comes from a real case that

11  occurred in this Court some years ago, famously known as the

12  don't-tear-it-down case. Some environmentalists petitioned in

13  this Court for an injunction to stop a historic building from

14  being torn down. The plaintiffs were called, I think, Don't

15  Tear It Down. I think they named themselves Don't Tear It Down.

16       And the matter was set down for a preliminary

17  injunction hearing before a judge of this Court, and the day

18  before the preliminary injunction hearing was to be held, it was

19  torn down. So the res didn't exist anymore; there was nothing

20  left not to tear down. What do you think happened to the

21  government in that case that tore it down?

22       MR. TERRY: Well, I suspect they --

23       THE COURT: It begins with C.

24       MR. TERRY: Right. But I assume that there was an

25  order or some other --

United States District Court 202-898-9398       Rebecca King, RPR, CRR
For the District of Columbia                    Official Court Reporter
                                                3c11739b-aea1-46ee-94d4-38fa68e07bf5

El-Mashad vs.                CV 05-270                    April 6, 2005
George W. Bush, et al.

Page 10

1          THE COURT:  No, there was nothing but a motion for the

2  injunction.

3          MR. TERRY:  Well, Your Honor --

4          THE COURT:  The building was torn down.

5          MR. TERRY:  -- we're not facing that situation here,

6  because as we've represented --

7          THE COURT:  Let me give you a more pointed example.  A

8  man is arrested and charged with some heinous crime that has the

9  public all up in arms, and is being held in a jail someplace,

10  and petitions for habeas corpus.  And the jailer says -- the

11  jailer looks out the door and sees a lynch mob outside the door,

12  and says, I don't need to mess with this habeas petition, go on;

13  opens the door and lets him out.

14          Now what?  What remedy is there, or what should the

15  Court do with the jailer?

16          MR. TERRY:  Well, Your Honor, we're not dealing with a

17  situation like that.  The declarations before the Court

18  specifically explain that the United States does not transfer

19  people to countries where it is more likely than not they're

20  going to be tortured, which is a standard that is consistent

21  with the treaties of this country, the convention against

22  torture, specifically.  It has an elaborate process in place to

23  make sure that that happens, involves high level officials,

24  involves multiple agencies of the United States, involves

25  assessments made based on opinions of offices within the State

El-Mashad vs.                    CV 05-270              April 6, 2005
George W. Bush, et al.

Page 11

1    Department that are responsible for producing the reports on
2    human rights with respect to various countries, it involves
3    consultation with embassies in countries where someone might be
4    sent to --
5              THE COURT:  Yeah, I got all that.  The point of both of
6    those admittedly not quite precise analogies is that it is the
7    jurisdiction of the Court that is the thing that the courts get
8    real jealous about.
9              MR. TERRY:  Well, Your Honor -- I'm sorry.  If I could,
10   let's take the lynch mob situation.  I mean, obviously, the
11   habeas, as far as producing the body before the Court, would
12   unfortunately be moot due to the lynching or whatever.
13             But as far as answering the question as to what should
14   be done to the jailer or what other remedial measures should be
15   taken, that kind of thing, those are all questions outside the
16   habeas case.  And here, what you're dealing with is a situation
17   where the Government, pursuant to the exercise of a legitimate
18   interest, as reflected in the declarations that are before the
19   Court, decides it wants to relinquish custody of an individual.
20             Now, if there are remaining claims for whatever, there
21   is a doctrine called Doctrine of Collateral Consequences where
22   people can keep their habeas case alive.  But the Supreme Court
23   cases that deal with that doctrine - and I'm talking about, for
24   example, Lane versus Williams and Spencer versus McKenna - they
25   just deal with the issue of whether or not the case is moot.

El-Mashad vs.                     CV 05-270                     April 6, 2005
George W. Bush, et al.

Page 12

1   The Court does not say, okay, case might be moot, so go ahead

2   and order the Government to retain custody of an individual.

3             In fact, in the Spencer case, you had a prisoner there

4   arguing to the Supreme Court, don't moot my case because I need

5   an adjudication as to the constitutionality of my sentence so I

6   can sue the state warden and prison officials under 1983.  And

7   the Court said, no, your habeas case is moot; whether or not you

8   can pursue some other action is a question for another day.  And

9   I submit that's what we have here.  The end game in any habeas

10  is the relinquishment of custody by the detaining government.

11            Now, another problem with what the petitioners are

12  seeking here is that it presumes that there is some form of

13  relief available that would involve something other than

14  repatriation of the petitioner pursuant to the process that's

15  outlined in our declarations.  Their motion and the reply and

16  the various declarations that they've obtained from folks in

17  Egypt, that kind of thing, talk about, you know, negotiations

18  with third countries to accept the individual.

19            So basically what they're asking the Court to do is to

20  either itself, or to order the executive, to somehow transfer

21  people to a third country, or to make sure that third country

22  will take them, in a situation where we have no control over the

23  other sovereign.  We can't order some other sovereign to take an

24  individual, that kind of thing.

25            The natural progression of the release of individuals

United States District Court 202-898-9398        Rebecca King, RPR, CRR
For the District of Columbia                      Official Court Reporter
                                                  3c11739b-aea1-46ee-94d4-38fa68e07bf5

Case 1:05-cv-02336-

El-Mashad vs.                    CV 05-270                    April 6, 2005
George W. Bush, et al.

Page 13

1   held at Guantanamo Bay is repatriation, assuming that in any

2   particular circumstance, the Government can obtain adequate

3   assurances that the person will be treated humanely on the other

4   end.

5          THE COURT:  All right.  Look, three or four judges of

6   this Court have confronted this same general issue;

7   Judge Kennedy issued a PI, Judges Friedman and Urbina declined

8   the PI but put conditions on the stay.  If you put this same

9   issue before four or five more judges of this Court, you're

10  going to get four or five variations of the same thing.  It

11  seems to me that we're going through a rather elaborate, almost

12  academic exercise here.

13         The Government wants all of this stuff to stop while

14  the appeals are taken of the decisions of Judge Joyce Green and

15  Judge Leon.  Fair enough.  Those two decisions will -- they're

16  sort of bookend decisions, and the way the Court of Appeals

17  rules on those cases is going to powerfully inform what happens

18  to all of the other petitioners here, even those whom you simply

19  want to send home.

20         You want a stay.  You don't want to respond to an order

21  to show cause, and certainly you don't want to provide the

22  factual response to an order to show cause.  Fair enough.

23  Judge Urbina has conditioned the stay on being notified within

24  30 days, and that's a perfectly good way of doing it.  I have a

25  slightly different approach to it.

United States District Court 202-898-9398          Rebecca King, RPR, CRR
For the District of Columbia                       Official Court Reporter
                                                   3c11739b-aea1-46ee-94d4-38fa68e07bf5

El-Mashad vs.                CV 05-270                April 6, 2005
George W. Bush, et al.

Page 14

1          My approach to it is I'm going to issue the order to
2     show cause, but I'm going to stay your response to the order to
3     show cause.  I have now established -- by the filing of the
4     habeas petition and the issuing of the order to show cause, have
5     established jurisdiction over the body of this man, these men.
6     If those men -- if you release those men without notifying the
7     Court and the parties in advance, the Government will be in
8     contempt of my order.  An injunction is an extraordinary remedy.
9     I don't want to enjoin the Government.  I'm not going to enjoin
10    the Government.  But I think we can sort of get past this dance
11    here.
12          You don't want to agree that you're not going to
13    release people within 30 days.  I'm not even going to make you
14    do that.  But you're sure going to have to answer to me if you
15    do.  That's the way I'm going the leave it.
16          MR. TERRY:  Your Honor, at the risk -- I don't want to
17    appear crafty or anything, but would it be appropriate if -- it
18    would be appreciated if you would make your order clear that no
19    such transfer is to occur, given your assertion of jurisdiction.
20          THE COURT:  So that you can send it to the Defense
21    Department?
22          MR. TERRY:  Well, Your Honor, they are our client and
23    they do hold them.
24          THE COURT:  I mean, if I do that, it's kind of like a
25    preliminary injunction, isn't it?  Do you want me to issue a PI?

United States District Court 202-898-9398          Rebecca King, RPR, CRR
For the District of Columbia              Official Court Reporter
                                          3c11739b-aea1-46ee-94d4-38fa66e07bf5

El-Mashad vs.                 CV 05-270                 April 6, 2005
George W. Bush, et al.

Page 15

```
 1      I would be happy to do that.  But I thought you opposed the PI.
 2              MR. TERRY:  We do oppose the PI, Your Honor, for the
 3      reasons that we've stated.  But as I understand what Your Honor
 4      is doing, you're going to issue the order to show cause, but
 5      you're telling us that that, in your mind, would subject us to
 6      contempt if we disobey that order.  And we'll certainly -- or if
 7      we release the petitioner, or transfer him or whatever.  And
 8      we'll certainly convey that to our client, I just would like it
 9      to be clear.
10              THE COURT:  I don't know that I'm going to put down in
11      writing -- I don't know that I'm going to threaten you with
12      contempt in a written order, because I don't know exactly what's
13      contemptuous and what's not.  But I think you're at risk.
14      That's what I'm telling you.
15              MR. TERRY:  And that's why I'm seeking some
16      clarification, so that we know what would be involved if -- you
17      know, contempt wise or otherwise if something were to happen.
18              And I'm not saying that in contemplation that something
19      is going to happen, but just for clarification.
20              THE COURT:  Frankly, I think everybody is clear that
21      nothing is going to happen.  The only issue we're trying to put
22      on this is what label to put on it.
23              And so since we're arguing about labels, I'm going
24      to -- as I say, I will issue a little written order.  I hope
25      it's clear enough.  If it's not clear enough, you can always
```

United States District Court 202-898-9398            Rebecca King, RPR, CRR
For the District of Columbia                          Official Court Reporter
                                                      3c11739b-aea1-46ee-94d4-38fa68e07bf5

El-Mashad vs.                CV 05-270              April 6, 2005
George W. Bush, et al.

                                                        Page 16

1    move for clarification.

2              MR. TERRY:  Thank you, Your Honor.

3              THE COURT:  Now, I have heard what amounts to an

4    argument from the Government, without hearing from the

5    petitioner.  Do you have any further argument, comment,

6    questions?

7              MR. SERGENT:  Your Honor, I think -- good afternoon,

8    Your Honor.  I think our concern, or our only concern, is that

9    without a factual return or discovery, that if the Government

10   comes back and they say, well, now we want to send them into the

11   custody of the Egyptian security services, the petitioners are

12   going to be in the same position they are now in terms of

13   addressing their rights to challenge that.

14             So I think what we would add to that is our request for

15   a factual return was directly in support of that concern during

16   the stay period, that we need to be prepared to address the

17   eventuality of the transfer.  And the same with the request in

18   our PI motion for discovery.  I think those are the two.

19             THE COURT:  I think one way or another, the petitioner

20   will have enough notice of any transfer to provide for the

21   issuance of a factual return, and a way to respond to it.  I

22   think, frankly, all of these cases have to confront this problem

23   of what happens if the Court of Appeals' decision is X instead

24   of Y.  Then we may have to get into factual returns.

25             But as the Government has pointed out in these papers

United States District Court 202-898-9398    Rebecca King, RPR, CRR
For the District of Columbia            Official Court Reporter
                                        3c11739b-aea1-46ee-94d4-38fa68e07bf5

El-Mashad vs.              CV 05-270              April 6, 2005
George W. Bush, et al.

Page 17

1    and in other cases, requiring the Government to produce factual

2    returns for all of these people at this time, given the

3    uncertainty of the situation and given the manifold problems of

4    security clearances and handling of classified documents and so

5    forth, is just -- it would be sort of a nightmare for the

6    Government.  I'm not going to require them to do it now, not

7    now.

8              But if it comes to -- if push comes to shove, you'll

9    have time.

10             MR. SERGENT:  My only concern would be that when we

11   hear that their transfer is imminent, it will be imminent, it

12   will be an emergency, there will be a sovereign state who has

13   agreed to accept custody, and those are the arguments we're

14   going to hear as to why there won't be time then.  If the Court

15   is not predisposed to listen to those arguments, it would be

16   better for us, certainly.

17             But the reason we're asking for it now is to be

18   prepared to face those arguments by respondents.

19             THE COURT:  Well, I hear you, and I don't know exactly

20   how this is going to play out.  Nobody knows exactly how it's

21   going to play out.  But with some degree of assurance, I think I

22   can tell you that there will be time for the parties to deal

23   with the merits if the Court of Appeals permits it and if need

24   be.

25             MR. SERGENT:  That's the only thing.

El-Mashad vs.                CV 05-270              April 6, 2005
George W. Bush, et al.

Page 18

1           THE COURT:  All right.  If there's nothing further,

2    counsel, that's going to be my ruling on the motions.  I'll get

3    a written order out very shortly.  Thank you very much.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

United States District Court202-898-9398      Rebecca King, RPR, CRR
For the District of Columbia              Official Court Reporter
                                          3c11739b-86a1-46ee-94d4-38fa66e07bf5

El-Mashad vs.                CV 05-270              April 6, 2005
George W. Bush, et al.

```
                                                            Page 19

 1                CERTIFICATE OF OFFICIAL COURT REPORTER

 2

 3            I, Rebecca King, certify that the foregoing is a

 4    correct transcript from the record of proceedings in the

 5    above-entitled matter.

 6

 7

 8

 9    _____        _____

10    SIGNATURE OF COURT REPORTER                 DATE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

United States District Court202-898-9398    Rebecca King, RPR, CRR
For the District of Columbia             Official Court Reporter

3c11739b-aea1-46ee-94d4-38fa68e07bf5