Previously filed with CSO and Cleared for Public Filing

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ) | |
| **MOHAMMED AL AMIN**, *et al.*, ) | |
|     *Petitioners/Plaintiffs*, ) | |
| ) | |
| **v.** ) | Civil Action No. 05-02336 (PLF) |
| ) | |
| ) | |
| **GEORGE W. BUSH**, *et al.*, ) | |
|     *Respondents/Defendants*. ) | |
| ) | |

### OPPOSITION TO MOTION TO DISMISS AND CROSS-MOTION TO STAY AND ABEY ACTION PENDING EXHAUSTION OF REMEDIES UNDER THE DETAINEE TREATMENT ACT

### INTRODUCTION

Petitioner Mohammed Al Amin ("Petitioner"), by and through his counsel, in response to Respondents' April 19, 2007 Motion to Dismiss[1], respectfully requests that this Court deny Respondents' Motion to Dismiss his habeas action, and moves this Court to hold this action in abeyance pending Petitioner's exhaustion of his remedies in the Court of Appeals under the Detainee Treatment Act of 2005[2] ("DTA") and the filing in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*[3] ("*Boumediene I*"). Petitioner has now been locked in Guantanamo for nearly five years, despite now having been "cleared for release." *See* Ex. A. Maintenance of the status quo is imperative to finally secure such release, an effort that has been hampered by the reluctance of countries to accept Petitioner, and which will be made virtually impossible if this action is dismissed prior to Petitioner's exhaustion of his remedies under the DTA, under which a petition on behalf of Petitioner is intended to be filed shortly.

---

[1] Respondents' Motion to Dismiss, Dkt. 32 ("Motion to Dismiss").
[2] Pub. L. No. 109-148, 119 Stat. 2680
[3] 476 F.3d 981 (D.C. Cir. 2007), *cert. denied*, 127 S. Ct. 1478 (2007).

Respondents' Motion to Dismiss grossly oversimplifies the legal landscape governing the instant habeas petition. Respondents predicate their argument upon the Circuit Court's holding in *Boumedine I*, and maintain that it constitutes the law of this Circuit that, *a fortiori¸* requires dismissal. In the first instance, the Court of Appeals has not even issued its mandate in *Boumediene I.* More importantly, the constitutionality of the Military Commissions Act of 2006[4] ("MCA") is still in dispute and is being actively litigated. Indeed, as discussed below, in the Supreme Court's denial of certiorari in *Boumediene*[5], five Justices signaled a willingness to hear the issues raised in *Boumediene I* once alternative remedies are exhausted.

Dismissal is neither required, nor prudent under these circumstances. Indeed, this Court would arguably abuse its discretion were it *not* to stay dismissal pending the exhaustion of remedies, provided there is good cause, potentially meritorious claims, and the absence of unreasonable delay – factors that are all present in this litigation.

Finally, this Court can and should retain its authority to issue and enforce orders maintaining the status quo of the petitions. In fact, two of the Justices who voted to deny certiorari in *Boumediene* specifically charged the courts with preventing any actions by Respondents that would damage Petitioner's ability to exhaust his remedies under the DTA.[6] Dismissal of this case could void the Amended Protective Order issued in this case as well as other orders and rulings regarding access to clients. Negotiating a new protective order that provides the same levels of access to clients and protection of the attorney-client privilege could

---

[4]  Pub. L. No. 109-366 § 7, 120 Stat. 2600.
[5]  127 S. Ct. 1478.
[6]  The Justices expressed concern regarding maintenance of the status quo during the litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'"  127 S. Ct. at 1478.

takes weeks if not substantially longer, ultimately delaying if not outright preventing counsel

from being able to file a fair and accurate petition for review under the DTA.  For this reason, the

Court should issue a stay-and-abey order, rather than dismiss this habeas action, while the DTA

petition is being litigated.

**I.    IT WOULD BE PREMATURE FOR THIS COURT TO DISMISS PETITIONER'S HABEAS ACTION FOR LACK OF JURISDICTION**

Respondents argue that dismissal of this habeas action is consistent with the

established law of this Circuit (*Boumediene I*) as well as the clear intent of Congress as

expressed within the MCA.[7]  This argument fails to recognize that the holding in

*Boumediene I* is neither final nor binding upon this court.  Moreover, the constitutionality of

the statute is still being litigated.  Because the Supreme Court invited habeas counsel to

exhaust all available remedies in order to re-petition the Court for review, and Petitioner's

counsel intends to do so, dismissal at this time would be premature.  Until the

constitutionality of the MCA has been resolved, it is more appropriate to maintain the stay of

these habeas actions.

---

[7] "Petitioners' motions seek relief that is contrary both to the law of the Circuit that these cases should be dismissed for want of jurisdiction, and to the clear intent of Congress, expressed in the MCA, to withdraw District Court jurisdiction over the detainees' habeas cases."  Motion to Dismiss at 1. The Respondents also cite a concurring opinion from *Ayuda v. Thornburgh*, 919 F.2d 153 (D.C. Cir. 1990) for the proposition that "once an opinion is released it becomes the law of this Circuit." (Motion to Dismiss at 3-4 n.5).  Therefore, the Respondents argue, the district court does not have jurisdiction to grant the stay-and-abey motion filed by Petitioner, and instead must dismiss this habeas corpus action.  *Ayuda* does not stand for this proposition. Indeed, it supports the opposite.  In *Ayuda*, the D.C. Circuit did not order the district court to dismiss the action – it simply granted a stay while the Supreme Court heard and resolved a closely related action.  It was the concurring opinion by Judge Henderson that urged that the matter be dismissed.  Judge Henderson's concurring opinion uses the language quoted by the Respondents here - that "once [an] opinion [is] released it bec[omes] the law of this Circuit." *Ayuda*, 919 F.2d at 154 (Henderson, J., concurring). But the panel did not follow that logic, granting the stay instead.

**A.      *Boumediene I* Is Not Binding Upon This Court**

The Court of Appeals has not issued its mandate in *Boumediene I*.  The *Boumediene*

petitioners have asked the court to stay the issuance of its mandate pending the completion of

DTA proceedings and the filing of a renewed petition for certiorari to review the court's

jurisdictional ruling in *Boumediene I*.  The court has not yet acted on the motion.  The law of this

circuit is that "[t]he filing of a notice of appeal, including an interlocutory appeal, 'confers

jurisdiction on the court of appeals and divests the district court of control over those aspects of

the case involved in the appeal.'"[8]  But the "district court does not regain jurisdiction over those

issues until the court of appeals issues it mandate."[9]

Moreover, this Court is not obligated to blindly apply the Court of Appeals' conclusions

regarding the jurisdictional implications of the MCA.  It has long been held that courts have

discretion to determine their own jurisdiction.  *Kircher v. Putnam Funds Trust*, 126 S.Ct. 2145,

2155 (2006); *United States v. Ruiz*, 536 U.S. 622, 628 (2002).  This type of threshold jurisdictional

determination, which must be made in each case based on its own facts, is precisely what the

Supreme Court did in *Ex parte Milligan*, 71 U.S. 2 (1866).  In discussing the authority of the

courts to address Milligan's claims that a writ of *habeas corpus* should issue notwithstanding action

that suspended the writ, the Supreme Court stated:

> The suspension of the privilege of the writ of *habeas corpus* does not suspend the
> writ itself.  The writ issues as a matter of course; and on the return made to it the
> court decides whether the party applying is denied the right of proceeding any
> further with it.

---

[8]  *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (quoting *Griggs v. Providence Consumer Discount Co.*, 459 U.S. 56, 58 (1982)).

[9]  *DeFries*, 129 F.3d at 1302.  The reasoning is one of judicial economy.  The so-called "mandate rule" "prevents the waste of judicial resources that might result if a district court, prior to the issuance of the appeals court's mandate, proceeds with a case, ruling on motions and hearing evidence, after which the appeals court reverses its original decision on rehearing."  *DeFries* at 1303.

71 U. S. at 130-31.  The Court then went on to consider whether the facts showed "that Milligan was a prisoner of war, and, therefore, excluded from the privileges of the statute."  *Id.*  The Supreme Court concluded that Milligan was not a prisoner of war and not covered by the suspension statute; therefore, the Supreme Court granted the writ.  *Id.*  Similarly, *in Duncan v. Kahanamoku,* 327 U.S. 304 (1946), the Supreme Court took jurisdiction and determined that the petitioner did not fall within the class of people to whom the Hawaiian martial law declaration applied.  *See also United States v. Villato,* 2 U.S. 370 (C.C. D. Pa. 1797) (where prisoner had not been naturalized, writ granted to free him from treason charge).  Nothing precludes this Court from conducting its own investigation into the jurisdictional issues involved in Petitioner's claims.

### B.    The Constitutionality of the MCA Is Currently Being Litigated

Respondents' argument that the law of the Circuit is settled is premised upon an incorrect interpretation of *Boumediene I*.   While the Court of Appeals based its decision in *Boumediene I* upon its reading of the MCA, the constitutionality of the MCA itself is still in dispute.  On February 20, 2007, a split panel of the Court of Appeals decided combined cases involving aliens imprisoned at Guantánamo Bay and held that post-*Rasul* statutes deprived courts of jurisdiction over the habeas actions brought by petitioners in those cases.[10]  The petitioners in *Boumediene* filed a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a statement respecting the denial of certiorari.[11]  In their concurrence, Justices Kennedy and Stevens held that, given the Court's "practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," the denial of certiorari was

---

[10]   *Boumediene I*, 476 F.3d at 981.
[11]   *Boumediene v. Bush,* 127 S.Ct. 1478 (2007).

appropriate "*at this time*." (emphasis added).[12]  It therefore appears that five Justices will give

serious consideration to a renewed petition for certiorari seeking review of the decision in

*Boumediene I*, following the petitioner's exhaustion of his DTA remedies.  A majority of the

Supreme Court, in other words, left open the possibility that the Court of Appeals' holding is

erroneous and that a petitioner has the right to pursue habeas relief in the district court.[13]

      While Respondents dismiss this process as a "speculative chain of events,"[14] in

reality, this process is well underway.  In fact, the reason Justices Stevens and Kennedy

opted not to except certiorari was because the petitioners in that case had not yet exhausted

all of their available remedies.[15]  There is nothing "speculative" about this; both holdings cited

by Respondents as authorities for their motion to dismiss have implied that their holdings may

have been decided differently had petitioners exercised this alternative option.  Until that option

has been exhausted by scores of other habeas cases (including this one), *Boumediene I* should be

treated as it is – the first in a series of many decisions involving distinct allegations and legal

theories that may be taken into consideration, but are not binding upon any of the district courts.

---

[12]  *Id.*

[13]  Indeed, the Supreme Court may reach these questions sooner, as two cases are now
pending before it that directly concern the MCA jurisdictional holding of the Court of
Appeals.  The first case involves a petition for certiorari before judgment in *Hamdan v.
Rumsfeld*, No. 06-1169, where the petitioner is seeking review of Judge Robertson's ruling
on the MCA jurisdictional issue.  The second case is an original habeas corpus petition in *In
re Ali*, No. 06-1194, which challenges the MCA jurisdictional holding of the Court of
Appeals.  The Supreme Court considered the *Ali* petition sufficiently serious that it directed
the government to respond to the petition by April 16, 2007.

[14]  Motion to Dismiss at 5.

[15]  127 S. Ct. at 1478.

C.      ***Boumediene* Does Not Establish The Record To Which Petitioner Should Be Bound Because He Is Exhausting Available Remedies And Other Legal Theories May Be Available On The Particular Facts Of This Case**

Respondents' request for dismissal also fails to recognize Petitioner's unique arguments, underlying facts, and resulting legal issues.  The *Boumediene* cases involve specific allegations and legal theories that do not control all the potential issues to be raised by Petitioner.  *See Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-42 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved).  The most basic distinction between this case and *Boumediene* is that here, the scope and efficacy of the DTA remedy will soon be tested.  Until then, the factual predicate for evaluating the legal issues is lacking, rendering the cases unripe for the fully developed review anticipated by Justices Kennedy and Stevens.  In the wake of *Boumediene I*, Petitioner now intends to seek from the Court of Appeals the relief set out in the DTA.

The DTA litigation, in addition to providing insight into whether the DTA is an adequate alternative to *habeas corpus*, will also provide the opportunity to determine this Court's role in the DTA exhaustion process.  Besides providing the procedural context for the litigation, Petitioner's DTA petition may include alternative requests for remand to this Court to resolve controverted facts, and other purposes.  For the Circuit Court to exercise these options, the present habeas case should be stayed and held in abeyance.

The *Boumediene* cases did not resolve all potential legal issues regarding the purported statutory elimination of jurisdiction that existed at the filing of the habeas petition under *Rasul*.  The post-exhaustion litigation, if not mooted by relief granted under the DTA, may involve legal approaches that the *Boumediene* majority did not address and/or resolve.  If *Rasul* means

7

anything, it would be that the constitutional validity of the DTA statute must be determined in light of the post-DTA litigation and address Petitioner's unique claims.

## II. THE COURT HAS THE DISCRETION TO ISSUE A STAY-AND-ABEY ORDER, AND SUCH AN ORDER IS MANDATED HERE

Staying this action is consistent with Supreme Court directives in the analogous situation when a federal court is presented with unexhausted habeas claims under 28 U.S.C. § 2254. In *Rhines v. Weber*[16], the Supreme Court explicitly approved the stay-and-abey procedure requested here by Petitioner in the context of federal habeas proceedings. The Supreme Court held that district courts have the discretion to issue stay-and-abey orders in lieu of dismissal where alternate remedies have yet to be explored in certain habeas actions. Moreover, where there is (i) just cause, (ii) no intent to delay on the part of the petitioner, and (iii) a likelihood of success, it would be an abuse of discretion for the Court *not* to issue a stay-and-abey order.

### A. The District Court Has Discretion to Enter a Stay

In *Rhines*, the prisoner filed in federal court a mixed habeas petition, one containing both claims exhausted through the state court system and unexhausted claims. The Supreme Court recited its precedent in *Rose v. Lundy*[17], in which it imposed a requirement of "total exhaustion" with respect to mixed petitions and, on that basis, directed the federal courts to dismiss mixed petitions without prejudice and instructed affected petitioners to present their unresolved claims in state court.[18]

Yet the *Rhines* Court observed that, at the time of *Lundy*, there was no statute of limitations on the filing of federal habeas petitions, which meant that petitioners could return to

---

[16]  544 U.S. 269 (2005)
[17]  455 U.S. 509 (1982)
[18]  *Id.* at 522.

federal court following exhaustion of their state claims "with relative ease."[19]  Congress'

enactment of a limitations period for federal habeas petitions after the *Lundy* decision meant that

the petitioner's federal habeas claim could become procedurally barred, as the petitioner pursued

unexhausted state claims following a dismissal without prejudice by federal court.  Recognizing

that problem, the *Rhines* Court allowed district courts to issue stay-and-abey orders at their

discretion.

    As discussed above, this case and other habeas actions by Guantánamo prisoners now

pending in this Court and others involve a genuine prospect of further Supreme Court review to

decide the federal courts' jurisdiction in their cases.  Petitioner's rights to proceed by seeking a

writ of habeas corpus, to the extent the Supreme Court may decide that right exists, could be

impaired if this Court dismissed the petition now.  In this way, the situation is comparable to

*Rhines*, where it was possible (yet not certain) that an otherwise valid federal habeas claim could

be barred as a result of pursuing unexhausted claims in another forum.

    **B.**    **It Would Be an Abuse of Discretion For This Court *Not* to Issue an Order to Stay-and-Abey, Pursuant to *Rhines***

    Respondents attempt to minimize the significance of *Rhines* by stating that the

Guantánamo habeas cases, unlike *Rhines*, do not involve "any temporal bar to a habeas petition,"

and the "authority of a court to enter a stay is constrained by statute."[20]  However, Respondents

fail to note that the constitutionality of the operative statute in *Rhines* (the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA")) was not being actively litigated as part of the

habeas petition, as it is here.  In fact, in the absence of intentional dilatory tactics by the

petitioner, the *Rhines* Court went on to hold that "it would likely be an abuse of discretion to

deny a stay and to dismiss" a petition if the petitioner has good cause for the failure to exhaust

---

[19]  *Rhines*, 544 U.S. at 274.
[20]  Motion to Dismiss at 7.

and the unexhausted claims are potentially meritorious.[21]  Petitioner satisfies all three

preconditions – good cause, no deliberate delay, and potentially meritorious claims – under

which a failure to stay-and-abey the current action would constitute an abuse of discretion.

First, there is good cause for the failure to exhaust.  Where the petitioner in *Rhines* at

least had the ability to pursue both modes of relief at the outset of his case, the "alternate

remedy" here, the DTA, was enacted after Petitioner filed his *habeas corpus* petition, and,

moreover it does not provide relief consistent with that sought in his underlying *habeas* action.

The questions left open in the Supreme Court's decisions in *Rasul v. Bush*, 542 U.S. 466 (2004),

which established a right to proceed under § 2241 at the time Petitioner submitted his documents,

and the subsequently enacted DTA and MCA, have resulted in significant uncertainty.  The

Court of Appeals required several rounds of briefing over two years before it issued its decision

in February 2007.  Respondents argue that Petitioner could have pursued his petition any time

since the enactment of the DTA[22]; however, it should be noted that as of the *Hamdan* decision[23],

Petitioner had no reason to believe that his habeas petition would be dismissed and that an

alternative remedy would be necessary.  Petitioner thus had excellent reasons for not initiating

the DTA procedures until the denial of certiorari in *Boumediene*.

Second, Petitioner has done nothing to deliberately delay this case. Counsel filed

Petitioner's petition for habeas corpus relief on December 6, 2005 and has sought an expeditious

resolution of this proceeding.

Third, the claims raised in this Court - and those that Petitioner expects to include in his

forthcoming DTA Petition - are meritorious.  Counsel seeks additional factual discovery

---

[21]  *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005).
[22]  Motion to Dismiss at 7.
[23]  *Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006).

regarding the circumstances under which interrogation of the Petitioner occurred, having reason to believe that they were made in violation of the Department of Defense's own standards and procedures as well as the laws and Constitution of the United States.  Counsel further believes that Petitioner has been improperly designated an enemy combatant, as Respondents have not established that he engaged in or supported hostile actions against the United States and its coalition allies between September 11, 2001 and the time of their capture.

Respondents argue that Petitioner has no statutory right to have his case abeyed as he exhausts alternative remedies.[24]  Again, Respondents misinterpret the holding in *Rhines*.  By testing whether the DTA petition to the Court of Appeals provides an adequate substitute for his habeas proceedings in this Court, Petitioner is challenging the constitutionality of the very statute Respondents are citing as the basis for dismissing this proceedings.  Not only is abeyance within this Court's discretion, but given the good cause for delay, absence of dilatory tactics, and potentially meritorious claims, it would be an abuse of that discretion not to issue a stay-and-abey order.

III.   **MAINTAINING THE STATUS QUO IS NECESSARY AS DISMISSAL WOULD IRREPARABLY HARM PETITIONER IN CONTRAVENTION OF THE EXPRESS INSTRUCTION OF THE SUPREME COURT**

In denying certiorari in *Boumediene*, Justices Kennedy and Stevens expressly charged courts, including this one, with a watchdog role.  In the event that the government was to "take additional steps to prejudice the position of petitioners in seeking review in this court," courts were tasked with "[acting] promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised."[25]  In their Motion to Dismiss, Respondents seek to have this Court dismiss the Amended Protective Order and all other access-related orders currently

---

[24]  Motion to Dismiss at 6.
[25]  *Boumediene*, 127 S. Ct. at 1478.

11

in place in this habeas proceeding and establish a brand-new set of procedures at the Court of

Appeals level.[26] Such actions could cause irreparable damage to Petitioner's ability to exhaust

his alternative remedies. Were the new protective order proposed by Respondents in

*Bismullah v. Rumsfeld* implemented, it would have a chilling effect upon the attorney-client

relationship, in that communications from counsel would no longer be privileged, but subject

to screening and redaction by the Department of Defense.[27] In addition, counsel would be

limited to three visits with their client, after which they would presumably be cut off from ever

seeing their client again. Negotiating a new protective order that ensured protection of

attorney-client privilege and access to Petitioner could drag on for months; meanwhile, in the

---

[26] Dismissal of this case would not automatically result in the dissolution of the protective and injunctive orders entered by the Court. As the Court recognized in *Adem v. Bush*, 425 F. Supp. 2d 7, 19-20 (D.D.C. 2006), the "Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba," entered on November 8, 2004 (*see In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004), like all protective orders directed to future events, survives dismissal of this case and may be modified, enforced, or dissolved only by separate order of the Court. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140-41 (2d Cir. 2004); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 780-82 (1st Cir. 1988); *Marshall v. Planz*, 347 F. Supp. 2d, 1198, 1201 (M.D. Ala. 2004); *Tucker v. Ohtsu Tire & Rubber Co.,* 191 F.R.D. 495, 499 (D. Md. 2000).

Similarly, injunctive decrees directed to future events, such as the orders entered by the Court requiring notice of potential transfers of detainees from Guantánamo Bay and the preservation of government records and counsel papers, survive dismissal of this case and may be modified, enforced, or dissolved only by separate order of the Court. *See United States v. Swift & Co.*, 286 U.S. 106, 114 (1932); *Cobell v. Norton*, 392 F.3d 461, 467 (D.C. Cir. 2004); *Gilmore v. People of the State of California*, 220 F. 3d 987, 1007 (9th Cir. 2000); *Dahlen v. Kramer Machine & Engineering Prods. Co.*, 303 F.2d 293, 295 (10th Cir. 1961); *State Police for Automatic Ret. Ass'n. v. Difava*, 164 F. Supp. 2d 141, 156 (D. Mass. 2001).

Moreover, equitable principles dictate that the Court should not dissolve such orders absent an evidentiary hearing. *See Hodge v. Dep't of Hous. & Urban Dev.,* 862 F.2d 859, 861 (11th Cir. 1989).

[27] Protective Orders, *Bismullah v. Rumsfeld*, No. 06-1197 at 36-37 (D.C. Cir. Aug. 25, 2006) ("Documents marked 'legal mail' by counsel shall be subject to content review and security and contraband screening by the DoD Privilege Team."), and at 37 ("Counsel will be notified with respect to legal mail that, upon review, will be redacted or screened out.").

absence of a protective order, Respondents could deny counsel all access to their client.  While

jurisdictional issues are being settled, it is within the discretion of this court to maintain the

status quo with respect to the protective order and counsel access procedures to ensure that

communications between Petitioner and his counsel are not summarily terminated, or

measurably undermined, by a statute whose constitutionality is in the process of being

litigated.

### A.    This Court Has the Discretion To Issue Orders Maintaining the Status Quo Pending Resolution of Jurisdictional Issues.

There is a long-established principle that, where the question of jurisdiction is still being

settled, the courts have "authority from the necessity of the case to make orders to preserve the

existing conditions and subject of the petition." *United States v. United Mine Workers,* 330

U.S. 258, 291 (1947) (quoting *United States v. Shipp,* 203 U.S. 563, 573 (1906) (Holmes,

J.)); *see also Kircher v. Putnam Funds Trust,* 126 S. Ct. 2145, 2155 (2006) (a federal court's

adjudicatory authority includes "its authority to determine its own jurisdiction").   This

Circuit has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the
> question of jurisdiction is determined, there was "authority from the necessity of
> the case to make orders to preserve the existing conditions and the subject of
> the petition . . . " . . . Clearly there was "power to preserve existing conditions
> while ... determining [the] authority to grant injunctive relief."

*In re President & Dirs. of Georgetown Coll.,* 331 F.2d 1000, 1005 (D.C. Cir. 1964) (quoting

*United Mine Workers*, 330 U.S. at 293).

District courts have recognized that, regardless of the ultimate resolution of jurisdictional

questions, they are authorized to enter orders necessary to protect litigants' interests in pending

litigations.  For example, after finding the rights of the prisoners extremely limited in scope, one

court entered an order on the merits of Respondents' motion for filter team review of attorney-

client material, denying the request, *Boumediene v. Bush,* 450 F. Supp. 2d 25 (D.D.C. 2006).

Another court granted the same request on the merits in *Hicks v. Bush,* 452 F. Supp. 2d 88

(2006). Additionally, counsel in most of the Guantánamo prisoner litigations have been operating

under the protective order first authorized by the District Court in *Al Odah* for almost two

years.

<b>B. <u>Maintaining the Status Quo is Necessary to Prevent Irreparable Harm to Petitioner's Claims.</u></b>

This Court has the discretion to enter a stay as it sees fit, and maintaining the status

quo is necessary here in order to prevent irreparable harm.  This Court should carefully

protect the status quo by maintaining the orders entered to date to assure that Petitioner is not

prejudiced in his ability to litigate the DTA action as well as to preserve potential remedies

before this court.  Maintenance of the Protective Order, and the client access provided therein, is

absolutely critical for effectively exhausting Petitioner's remedies under the DTA.  Without the

Protective Order in place, there is no legal mail channel; there is no privileged communication

between attorney and client; base visits would almost certainly be eliminated. Absent the

protections of the Protective Order, counsel will be unable to provide the Court of Appeals with

sufficient factual information to make a balanced and informed decision regarding the merits of

their DTA Petition.

Also, Respondents have signaled their intent to dramatically restrict prisoners' access to

counsel, proposing a protective order at the Court of Appeals level that would, among other

things, require all legal mail from counsel to Petitioner to be first screened and redacted by

Department of Defense employees and restrict counsel to three visits with their clients.

Maintenance of the status quo is critical to foreclosing Respondents from prejudicing Petitioner's

ability to litigate this case at either the District Court or Circuit Court level.  In the event the case

14

is remanded, or if the DTA procedures prove an inadequate substitute for constitutionally-required habeas corpus procedures, this Court should be in position to proceed immediately on the issues raised.  Petitioner has waited nearly three years to enjoy the promise of *Rasul*, and should be spared further delay.

## CONCLUSION

For the foregoing reasons, this Court should deny Respondents' Motion to Dismiss and enter an order preserving the status quo by staying pending petition for a writ of habeas corpus and holding such litigation in abeyance pending the outcome of the Petitioner's DTA petition.

Dated:  May 3, 2007                                    Respectfully submitted,

Counsel for Petitioner:


_____/s/ Avi S. Garbow_____
Michael D. Hausfeld (DC 153742)
Avi S. Garbow (DC 445399)
Matthew K. Handley (DC 489946)
Matthew B. Kaplan (DC 484760)
Jason M. Leviton (DC 495460)
**Cohen, Milstein, Hausfeld & Toll, P.L.L.C.**
1100 New York Ave, N.W., Suite 500
Washington, DC 20005
Tel:  (202) 408-4600
Fax: (202) 408-4699

John Holland (CO 5246)
Anna Cayton-Holland (CO 35811)
**Law Offices of John Holland**
2150 W. 29th Ave, Suite 500
Denver, CO 80211